UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
: 
SPHERE DIGITAL, LLC              :        ORDER
:
               Plaintiff,      :        20–CV–4313(CM)
:
   -against-                  :
:
CHRISTOPHER ARMSTRONG, OFFER     :
SPACE, LLC, and TRAFFIC SPACE    :
               Defendants.     :
:
------------------------------------------------------------X

**DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

McMahon, C.J.:

**INTRODUCTION**

On June 5, 2020, Sphere Digital, LLC (Plaintiff) commenced this breach of contract/unjust enrichment action against three defendants: (1) Offer Space, LLC (Offer Space); (2) Christopher Armstrong (Armstrong); and (3) Traffic Space, LLC (Traffic Space). According to the complaint, Armstrong is the sole member of both of the corporate defendants.

In the Amended Complaint that is the subject of this motion, Plaintiff principally alleges that Offer Space has not paid it for services provided by Sphere pursuant to a contract between them known as the Insertion Order. (Count I). Plaintiff seeks to hold Armstrong and Traffic Space liable for Offer Space's alleged breach of contract on an alter ego theory.

In the alternative, Plaintiff asserts two claims for unjust enrichment. In Count II, Sphere alleges that all three defendants benefitted from advertising services provided by Sphere. It is asserted as an alternative to the breach of contract claim in Count I, in the event that a trier of fact were to decide that the Insertion Order did not obligate Offer Space to pay anything. In Count III, Sphere alleges that, if it be found that there is no valid and binding contract between the parties – such that Counts I and II must be dismissed – all three defendants were unjustly enriched by receiving the benefit of Sphere's services.

Only Count I is premised on alter ego liability as to defendants Armstrong and Traffic Space.

The damages sought under each count are just over $200,000.

Defendants Armstrong and Traffic Space have filed separate but identical motions to dismiss the amended complaint as against them for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The motions are DENIED.

**FACTS**

### I. Parties

Plaintiff is a limited liability company, organized and existing under the laws of Delaware, with its principal place of business in California. Doc. No. 25 ¶ 4. It has one member, who is a citizen of California. *Id.*[1]

Defendants Offer Space and Traffic Space are both limited liability companies, organized and existing, and with their principal place of business in Utah. *Id.* ¶¶ 6–7. Offer Space and Traffic Space are located at the same address in Utah. *Id.*

Defendant Armstrong is a natural person and resident of Utah. *Id.* ¶ 5. Armstrong is the sole member and only registered principal of both Offer Space and Traffic Space. *Id.* ¶¶ 6, 7

### II. The Allegations of the Amended Complaint

The Amended Complaint alleges that Plaintiff and Offer Space entered an agreement known as the Insertion Order. *Id.* ¶ 14; *see also*, Doc. No. 25-1. The insertion order is a form contract created by Plaintiff for the provision of services in connection with a particular advertising campaign – in this case, a campaign to begin on January 1, 2020, with no end date specified. It is subject to standard terms and conditions that were created by Sphere and attached to the Insertion Order, which is simply a short form order specifying who the parties are and identifying the specific campaign that is the subject of the order.

Armstrong signed the Insertion Order on behalf of Offer Space. Doc. No. 25-1. The document bears the date December 16, 2016, and the Amended Complaint alleges that the

---

[1] Interestingly, the Insertion Order identifies Plaintiff as a New York LLC. The Amended Complaint alleges that this is erroneous. ¶4. Since the insertion Order is a document created by Sphere, and the designation of Sphere as a New York corporation appears in the header to Spheres's "Standard terms & Conditions," I am somewhat troubled by this discrepancy between the purported contract and the allegations of the complaint. This being a motion to dismiss, however, I must assume the latter to be true.

document was made effective "as of" the earlier date. Doc. No. 25 ¶14. The significance of this date will be explained later; for now, it is enough to note that the "as of" allegation strongly suggests that the Insertion Order was signed subsequent to December 2016.

The Insertion Order gave Plaintiff the right to display "the Advertisement" that was to be provided by Offer Space (the "Advertiser") during a designated contract period that appears to have coincided with the commencement of the advertising campaign. On the front page of the Insertion Agreement the "start date" was identified as January 1, 2020. Doc. No. 25-1. The Complaint alleges Sphere had agreed to arrange for third parties to send emails advertising Defendants' good and services and/or the good and services of Defendants' clients. Sphere also agreed to make reasonable efforts to target advertising and both parties made commitments with respect to lead generation. Offer Space allegedly agreed to provide the text, images, links, and other content to be included in the email advertisements and third-party websites to which the e-advertisements were linked. In the paragraph headed "Payment," Sphere committed to submit invoices on a monthly basis "at the rates reflected in the Insertion Order," which invoices Offer Space agreed to pay without offset. The court has not yet located any rates in the Insertion Order.

The Insertion Order contains an indemnification clause, which provides that Sphere "will defend, indemnify and hold harmless Advertiser, its subsidiaries and affiliated companies and all of their directors, officers, employees and agents, from and against any and all third-party losses arising out of or alleged to arise out of, or in connection with any breach by Sphere Digital LLC of its representations and warranties as set forth in this Agreement."

The Insertion Order does not mention Traffic Space at all. It identifies Armstrong as the Contact Agent for Offer Space.

The Insertion Order provides as follows: "This Agreement will be construed in accordance with the laws of the State of New York without regard to its conflict of law principals, and the parties consent to the exclusive jurisdiction of the state and federal courts having jurisdiction over New York County, New York." *Id.*

Sphere alleges that Offer Space has breached the Insertion Order by failing to pay invoices totaling $212, 980. Offer Space allegedly withheld this money because of a dispute over whether Sphere is required, under the indemnification clause set forth above, to indemnify an entity Slick Rock in something called the XMission Demand. *See generally* Doc. No. 25 ¶¶ 26–39. XMission alleges that emails sent by Offer Space and others to its customers violated the Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM Act), 15 U.S.C. § 7701 et seq.

Sphere alleges that the Insertion Order was executed in order to shift liability for the payment of Sphere invoices from co-defendant Traffic – which had paid them historically (see *infra*) – to Offer Space, which had no intention of paying them. *Id.* ¶ 29.

## III.    The Allegations of the Counterclaim

Traffic Space, Armstrong, and Plaintiff had a business relationship long before the signing of the Insertion Order that is the subject of the Sphere's lawsuit. In fact, these parties have done over $2.3 million in business over the last few years, apparently pursuant to the terms of an entirely different agreement.

According to the counterclaim that Offer Space has filed against Sphere (Doc. No. 31), Sphere and Traffic Space (not Offer Space), entered into a contract called the "Program and Site Terms and Conditions" on December 21, 2016. *See* Doc. No. 25 ¶ 25 (citing Counterclaim, Doc. No. 20 ¶¶ 11, 22). Not coincidentally, that is the alleged "effective date" of the Insertion Order –

6

which, according to the counterclaim, was signed on January 3, 2020, notwithstanding the date that appears thereon, which is specifically alleged to be a backdate Doc. No. 31 at ¶ 7.  This allegation is certainly plausible, as the Insertion Order references a January 1, 2020, "start date" for the advertising program covered thereunder; it does not contradict any allegation in the Complaint, since the actual signing date is not pleaded – only the "as of" date.

The Program and Site Terms and Conditions govern an arrangement by which Traffic Space was to provide Sphere – the "Affiliate" – with electronic advertising services. The parties agreed that Traffic Space could, at its sole discretion, post offers and advertising programs on Traffic's Site (i.e., would "host" the program or advertisement). The concept called for Traffic to be paid by merchants (seemingly after the occurrence of an Event), and for Sphere, the Affiliate, to be paid per the occurrence of an Event by Traffic.

The agreement between Sphere and Traffic Space required Sphere to comply with the CAN-SPAM Act, 15 U.S.C. § 7701, and contained an indemnification clause pursuant to which Sphere agreed to hold Traffic harmless for claims by third parties arising out of Sphere's misuse of the Site, while Traffic agreed to hold Sphere harmless from third party claims of intellectual property infringement resulting from Sphere's display of content created or provided by Traffic.

Offer Space alleges that the Program and Site Terms and Conditions is the agreement that actually governs the relationship between (or among) the parties to this lawsuit.  It further alleges, both in its answer to the complaint and in its counterclaim, that it is "investigating" whether Offer Space itself ever entered into any agreement with Sphere. It alleges that the XMission Demand relates to emails sent by Offer Space and unidentified "others" to XMission's customers pursuant to three separate agreements: the Program and Site Terms and Conditions, something called the List Management Agreement, and the Insertion Order. If that allegation

were to prove true, it is questionable whether the Insertion Order would be the sole contract document relevant to Sphere's claims – but on this motion to dismiss, the court assumes Sphere's allegations to be true. And indeed, in its counterclaim, Offer Space seeks a declaratory judgment resolving which agreement(s) govern the parties' commercial relationship insofar as it relates to the XMission Demand. Doc. No. 31 at ¶¶ 23-28.

The Program and Site Terms and Conditions contract is governed by Utah law and has a Utah forum selection clause. "Governing Law. This Agreement shall be construed in accordance with and be governed by the laws of the State of Utah without application of its conflict of law provision. Any action arising hereunder shall be filed in the Fourth District Court, Utah Country, State of Utah." Doc. No. 31-1 at 8.

### The Alter Ego Allegations

The three defendants are closely connected. Armstrong is the sole member and only registered principal of both Offer Space and Traffic Space. Doc. No. 25 ¶¶ 6, 7.

The Amended Complaint contains the following factual allegations with respect to allegations of alter ego status: (1) Armstrong sent emails regarding the Plaintiff and Offer Space from both his Offer Space and Traffic Space email accounts. *Id.* ¶ 8.c. (2) Offer Space and Traffic Space share the same office and principal place of business. *Id.* ¶ 8.e. (3) Both before and after the Plaintiff and Offer Space signed the Insertion Order, Plaintiff's invoices to Offer Space were routinely paid by Traffic Space. *Id.* ¶¶ 20, 23 (discussing the pre- and post-Insertion Order payments, respectively); *see also*, Doc. No. 25-6 (post Insertion Order invoice to Offer Space paid in full paid by Traffic Space).

IV. **The Motion to Dismiss**

Defendants Armstrong and Traffic Space filed separate motions to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. *See* Doc. No. 32 and 33 (identical motions). The motions are addressed to causes of action rather than to counts – to the "alter ego claim" and the "unjust enrichment claims" – but the court assumes that the motions seek dismissal of all three causes of action as against the two moving defendants. Offer Space did not make a motion to dismiss.

Armstrong and Traffic Space moved to dismiss Count One, the breach of contract claim, on the ground that they cannot be deemed the alter ego of Offer Space, the signatory to the Insertion Order. They argue that the facts pleaded touching on dominion and control are insufficient to support a finding of alter ego and that Plaintiff's failure to allege fraud means that the alter ego claim fails as a matter of law. They move to dismiss Counts Two and Three, the unjust enrichment claims, on the grounds that Plaintiff did not allege sufficient facts to support its claim that either defendant was unjustly enriched.

## DISCUSSION

**Standard for Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While all reasonable inferences should be drawn in favor of the plaintiff, courts are not required to "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual allegations to

9

nudge a claim "across the line from conceivable to plausible." *Id.* at 547. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). A district court may also consider a document that is not incorporated by reference, where the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Rogers v. Blacksmith Brands, Inc.*, 2011 U.S. Dist. LEXIS 148297, 2011 WL 6293764, at *4 (S.D.N.Y. Dec. 13, 2011) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

**General Discussion**

It is perfectly obvious that the parties disagree about which of two agreements governs their relationship. That is not an issue that is amenable to resolution on a motion to dismiss. It is also obvious that they disagree about the forum in which this case should be litigated – an issue that might well be amenable to decision on a *forum non conveniens* or transfer motion, since New York has absolutely nothing to do with a dispute between individuals from Utah and California who have created corporations under the laws of Delaware and Utah.

But no such motion has been made. Instead, two of the defendants – Traffic and Armstrong – have moved to dismiss the complaint as against them on the ground that there is no basis to hold them liable. That motion must be denied. There are simply too many open issues to be decided – issues that depend on the resolution of disputed issues of fact.

For the moment – and because this is a motion to dismiss a complaint – I will assume that the well-pleaded allegations of the complaint are true. That means I must assume for purposes of deciding this motion that Offer Space entered into a contract with Sphere and that the non-payments of which Sphere complains are for obligations incurred pursuant to this contract. Because of the filing of the counterclaim, I know full well that both of these allegations (and particularly the latter) are in dispute – which puts the issue of governing law in dispute as well. But the rule that, on a motion to dismiss, the well-pleaded factual allegations of the complaint are presumed true allows this court to assume that the governing agreement is the Insertion Agreement -- a contract that, by its terms, is governed by New York law. And under New York law, the issue of alter ego is fundamentally an issue of fact, which cannot be resolved on a motion to dismiss.

"It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014). There are two broad areas of exemption to the general rule against piercing the corporate veil: (1) "to prevent fraud or other wrong," or (2) "where a parent dominates and controls a subsidiary." *Carte Blanche Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993).

Piercing the corporate veil in New York requires plaintiff show, "(1) the parent corporation dominates the subsidiary in such a way as to make it a 'mere instrumentality' of the parent; (2) the parent company exploits its control to 'commit fraud or other wrong'; and (3) the plaintiff suffers an unjust loss or injury as a result of the fraud or wrong." *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) (*NYSEG*) (quoting *Wm.*

*Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)). To pierce the corporate veil, control, "whether of the subsidiaries by the parent or the corporation by its stockholder, is the key; the control must be used to commit a fraud or other wrong that causes plaintiff's loss." *Passalacqua*, 933 F.2d at 138; *see also NYSEG*, 766 F.3d at 228 (same).

Courts consider the following ten-factors to determine the degree of domination by a parent:

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like;

(2) inadequate capitalization;

(3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes;

(4) overlap in ownership, officers, directors, and personnel;

(5) common office space, address and telephone numbers of corporate entities;

(6) the amount of business discretion displayed by the allegedly dominated corporation;

(7) whether the related corporations deal with the dominated corporation at arms length;

(8) whether the corporations are treated as independent profit centers;

(9) the payment or guarantee of debts of the dominated corporation by other corporations in the group; and

(10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*NYSEG*, 766 F.3d at 224 (quoting *Passalacqua*, 933 F.2d at 138).

"Courts are not required to find that every factor is present, and no one factor is dispositive." *Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 440 (S.D.N.Y. 2018). The ultimate question for the Court is "whether the policy behind the presumption of corporate independence and limited shareholder liability -- encouragement of business development -- is outweighed by the policy justifying disregarding the corporate form -- the need to protect those who deal with the corporation." *NYSEG*, 766 F.3d at 224.

As should be obvious, whether Armstrong and Traffic Space can be considered the alter egos of Offer Space presents questions of fact that cannot be resolved on this motion. Alter ego and veil piercing are not amenable to resolution on a motion to dismiss because "the nature and extent of the dominion and control exercised by defendants over their subsidiary is a question of fact, not subject to resolution on a motion to dismiss." *Union Carbide Corp. v. Montell N.V.*, 944 F. Supp. 1119, 1145 (S.D.N.Y. 1996) (internal brackets removed).

This is certainly not one of those rare cases that presents an exception to the usual rule. The few facts pleaded in the complaint that address alter ego issues – the same principal, shared office space, paying each other's debts – would of course factor into an analysis of alter ego status and alter ego liability, but they are insufficient to allow the court to examine the determinative issues. However, that does not render the complaint deficient. A complaint need not (and often cannot) plead every single factor that might play into an alter ego analysis; as long as there are some plausible allegations of dominion and control, a plaintiff can survive a motion to dismiss. There is enough in this complaint to get us past that motion.

And while I reach this conclusion based solely on the allegations of the complaint – not the answer and counterclaim – I note that denying the motion to dismiss is consistent with the questions about the parties' relationship that are raised by that pleading.

That said, plaintiff's barebones recitation of these factors in the complaint does not give rise to any presumption that the corporate veil can be pierced – a conclusion that is disfavored in the law, and so subject to stringent proof. We shall see how the evidence is developed in discovery.

**Unjust Enrichment**

In the alternative to its breach of contract claim, Plaintiff asserts two claims of unjust enrichment. *Id.* ¶¶ 48–59. These claims cannot be dismissed under Rule 12(b)(6) either.

Under New York law, an unjust enrichment claim requires the plaintiff to prove three factors: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

Plaintiff pleads sufficient facts that, if believed, would establish that it provided services to Armstrong and Traffic Space, or from which those entities benefitted; that those entities are nominally not parties to the contract alleged to exist between Sphere and Offer Space; and that Sphere should be paid for what it provided. The motion to dismiss Counts II and III must also be denied.

Traffic Space and Armstrong argue that unjust enrichment claims can only "be obtained from the parties with whom the plaintiffs had contracted as to the services provided." Doc. No. 32 at 12. But that is not the law. New York law does not require direct dealing or a substantive

relationship. New York only requires a relationship that is not "too attenuated." *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16, 831 N.Y.S.2d 760, 766, 863 N.E.2d 1012, 1018 (2007). For example, the relationship in *Sperry* was too attenuated for a tire purchaser to bring an unjust enrichment claim against a chemical manufacturer for alleged anti-competitive price fixing of tire inputs, resulting in higher priced tires. *Id.*

    Here, Plaintiff seeks recovery for services provided to Offer Space, but that are alleged to have conferred a direct benefit to the other two defendants. Plaintiff specifically pleads that Armstrong and Traffic Space are Offer Space's alter egos, such that what benefitted Offer Space benefitted all three defendants. Armstrong is the member of Office Space, so as to him the allegation is particularly plausible. The complaint also alleges that Traffic Space paid Sphere for services rendered pursuant to (or at least subsequent to the signing of) the Insertion Order, which suggests that Traffic Space directly benefitted from those services. (Doc. No. 25 ¶ 18, 23) Far from the attenuated relationship in *Sperry*, facts are pleaded that would, if proven, support a finding of direct benefit to parties other than Offer Space.

## CONCLUSION

For the reasons set forth above, the motions at Docket #32 and 33 are DENIED. The Clerk of the Court is directed to remove these motions from the Court's list of pending motions.

This constitutes a "written opinion" of the court.

DATED: October 14, 2020

New York, New York

                                                                  Chief Judge

BY ECF TO ALL PARTIES